**Charles SHELTON, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15433.**

Court of Criminal Appeals of Oklahoma.

Feb. 24, 1971.

Don Anderson, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Max A. Martin, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Charles Shelton, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the offense of Murder; his punishment was fixed at life imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial adduced that on January 3, 1965, the defendant was living in a duplex on North Laird Street in Oklahoma City. Mrs. Charity Scott, a relative of the defendant by marriage, lived in the other duplex. She testified that her son, James Bates, came to the duplex to help her with some errands. She asked her son to carry out the garbage. He left carrying the red plastic container and she heard the top of the outside garbage can open. She then heard something which sounded like an explosion. She went outside and saw her son lying on his back and observed blood and his brains on the street (T 18).

Officers Boyd and Armer were assigned to investigate the shooting. They testified that they observed a male subject lying on the sidewalk with a gunshot wound behind his left ear. They talked to a bystander, Willie Marshall, who had observed the incident, and then went to the defendant's duplex. They asked the defendant what had happened and he replied that he had shot a man. The defendant showed them where a .38 caliber revolver was underneath a mattress. There were four live rounds and one spent cartridge inside the weapon.

Detective Rowden testified that he was assigned to make the follow-up investigation. He advised the defendant of his constitutional rights and the defendant made a statement concerning the incident. The defendant stated that he had had difficulty with the deceased for some time concerning his walking across his yard and parking his car in his yard. He observed Bates walking across the yard and went to the back door carrying the pistol in his back pocket. He informed Bates not to walk across the yard and Bates attempted to strike him with the trash can. He attempted to strike Bates with the gun, dropped it, and picked it up and fired one shot at Bates. Bates fell to the sidewalk and the defendant walked back into his house. He did not indicate that he was in fear of injury or harm from Bates (T 50).

Willie Marshall testified that he was walking across the street and observed Bates come out of a house carrying a red plastic trash basket. He observed the defendant come from his house with a gun in his hand. Bates began to back away as the defendant approached and raised the trash basket between himself and the defendant. The defendant struck at Bates with the pistol and dropped it. He bent down, picked up the weapon and fired it, striking the left side of Bates' head. He testified that he did not know any of the parties prior to this event.

It was stipulated that Bates was dead on arrival at Mercy Hospital and that the

**810**

body had a gunshot wound over the left ear at the base of the skull (T 95).

The defendant testified that he was seventy-four years of age, and had known the deceased for approximately forty-two years. Prior to January 3, 1965, he had argued with Bates concerning walking and parking his car on his yard. The deceased had threatened to "kick the so and so out of him" several times. On the day in question he saw Bates walking across his yard and asked him not to do so. Bates replied that he would kick the hell out of him (T 103). He stepped outside and Bates struck him. He removed the gun from his pocket and attempted to strike Bates, but dropped the gun. Bates started toward him and he then shot him. He testified that he fired the shot because Bates threatened to kill him. He did not mean to kill him, but only to stop him. He testified, on cross-examination, that Bates was backing away from him when he fired the shot (T 122).

The defendant's first proposition alleges that the evidence is not sufficient to sustain the verdict. It is apparent from the foregoing recital of facts that there was ample evidence to support the verdict of the jury. The defendant's theory of self-defense is in itself conflicting. The defendant admitted that Bates was backing away from him at the time he fired the shot. There was no evidence that the victim had any weapon, with the exception of the plastic waste basket.

This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. Gray v. State, Okl.Cr., 467 P.2d 518. We, therefore, find this proposition to be without merit.

The defendant's final proposition contending the punishment is excessive, is

wholly without merit. Life imprisonment is the minimum allowed by law.

In conclusion, the record is free of any error which would justify modification or reversal, and the judgment and sentence is accordingly affirmed.

NIX and BRETT, JJ., concur.